# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

LEVI WILSON, individually, and M.W., By and through his next friend LEVI WILSON,

        Plaintiffs,

vs.

SCOTT LAMP, in his individual and official capacity, STATE OF IOWA, JESSICA DORHOUT-VAN ENGEN, in her individual and official capacity, and JOHN DOE, in his individual and official capacity,

        Defendants.

No. C 15-4070-MWB

**MEMORANDUM OPINION AND ORDER REGARDING DEFENDANTS' MOTIONS TO DISMISS**

_____

## TABLE OF CONTENTS

**I.     FACTUAL AND PROCEDURAL BACKGROUND** ................................... **2**

**II.    ARGUMENTS OF THE PARTIES** ............................................ **3**
    *A.     Summary of the Plaintiffs' Argument* ......................................... *4*
    *B.     Summary of the Defendants' Argument* ....................................... *6*

**III.   DISCUSSION** ......................................................... **7**
    *A.     Standard of Review for Motion to Dismiss* ................................... *8*
    *B.     Excessive Force in Violation of the Iowa Constitution* .................... *10*
    *C.     Excessive Force Pursuant to Section 1983* .................................. *11*
    *D.     Qualified Immunity For Excessive Force* .................................... *16*
    *E.     Iowa Tort Claims Act* ....................................................... *22*
        *1.     Intentional infliction of emotional distress* ........................... *24*
        *2.     Negligence* ................................................................ *25*
        *3.     Invasion of privacy* ...................................................... *26*

**IV.    CONCLUSION** ........................................................ **29**

All but stated in the parties' filings, the claims below stem from alleged police misconduct arising from the plaintiffs' act of driving while black. In the present case, plaintiffs, Levi Wilson ("Wilson") and his minor child, M.W., assert federal constitutional claims for violation of their Fourth Amendment rights pursuant to 42 U.S.C. § 1983 and for violation of Iowa Constitution Article I § 8, the state constitutional equivalent of the Fourth Amendment. Additionally, they assert the state tort claims of intentional infliction of emotional distress, invasion of privacy, and negligence against three state officials and the state of Iowa pursuant to the Iowa Tort Claims Act ("ITCA"). The case is now before me on defendants' Motions to Dismiss (docket nos. 6, 12).

## I.  FACTUAL AND PROCEDURAL BACKGROUND

The plaintiffs' Petition (docket no. 3) was originally filed in Iowa District Court for Woodbury County on August 5, 2015. This case was removed to federal court on August 20, 2015, pursuant to 28 U.S.C. §§ 1331, 1367(a), 1441(a), and 1446 (docket nos. 1, 2). Defendant Dorhout-Van Engen filed her Motion to Dismiss (docket no. 6) on August 28, 2015. Defendants Lamp and the state of Iowa filed their Motion to Dismiss (docket no. 12) on September 3, 2015.

The plaintiffs and defendants may use slightly different shades of adjectives to describe the events that give rise to this action, but the facts are largely uncontested. On September 23, 2014, three state law enforcement officials: Lamp, an Iowa Division of Criminal Investigation agent; Dorhout-Van Engen, an Orange City police officer; and another unnamed officer, were in pursuit of a suspect accused of stealing gasoline. The suspect was described only as "dark skinned" by a convenience store clerk. However, this suspect was later identified as David, the brother of Levi Wilson. The plaintiffs, Wilson and his minor son, M.W., were pulled over by the three officers while driving on a public highway in Orange City, Iowa.

The three state officials emerged from their unmarked vehicle with firearms drawn and pointed at Wilson and M.W. and instructed Wilson, who was driving, to "Get the fuck out of the car!" Dorhout-Van Engen and the unnamed officer were dressed in street clothes. Wilson obeyed the commands of the law enforcement officers and exited his vehicle without incident. Lamp then asked Wilson, "Are you David?" Wilson replied that his name was not David and asked why he was being stopped. Lamp stated that a clerk at a convenience store said that a dark skinned person drove off without paying for gasoline. Wilson is dark skinned.

Dorhout-Van Engen then began to search Wilson's person at Lamp's instruction. At this point, Dorhout-Van Engen and Lamp stopped pointing their firearms in the direction of the plaintiffs, but the third, unnamed individual at the front of the vehicle kept his firearm pointed in the direction of M.W. During this search, Dorhout-Van Engen made an acknowledging comment to Wilson, "Hey Levi, how are you doing?" apparently recognizing him. Dorhout-Van Engen then proceeded to search Wilson's vehicle. According to the State Appeal Board Claim Form, filed by Wilson but incorporated into the record by defendants (docket nos. 12-2, 12-3), the search included the interior of Wilson's pickup truck, the bed of the truck, which was covered by an enclosed top and secured by a closed tailgate, and the underside of his truck. Consent for these searches was neither requested nor granted. After concluding their search of Wilson's vehicle, the officers began pursuing a different vehicle that drove by on the highway and stopped it.

## II.   ARGUMENTS OF THE PARTIES

The plaintiffs' claims are as follows: Count I for unreasonable search and seizure under the Fourth Amendment of the United States Constitution and Article I § 8 of the Iowa Constitution; Count II for excessive force, also under the Fourth Amendment of the

United States Constitution and Article I § 8 of the Iowa Constitution; Count III, a state tort claim for intentional infliction of emotional distress; Count IV, a state tort claim for invasion of privacy; Count V, a state tort claim for negligence; and Count VI for the "Iowa Tort Claims Act."[1]

Dorhout-Van Engen filed her Motion on August 28, 2015 (docket no. 6), and moves to dismiss Count II for excessive force, Count IV for invasion of privacy, and Count V for negligence, on the grounds that the plaintiffs fail to state a claim for relief.

Scott Lamp and the state of Iowa filed their Motion on September 3, 2015 (docket no. 12). They move to dismiss several claims not included in the plaintiffs' Petition, which are considered in this Opinion and Order only for the sake of clarity. Additionally, Lamp and the state of Iowa move: to dismiss Count II, for excessive force, against Lamp for failure to state a claim; to substitute the state of Iowa for Lamp and dismiss Lamp pursuant to the ITCA for Count III, intentional infliction of emotional distress; to substitute the state of Iowa for Lamp and dismiss Lamp for Count IV, invasion of privacy, or, in the alternative, to dismiss it entirely for failure to state a claim; to substitute the state of Iowa for Lamp and dismiss Lamp for Count V, negligence, or, in the alternative, to dismiss it entirely for failure to exhaust the administrative remedies required by the ITCA; and, finally, to dismiss Count VI, the "ITCA" claim, for failure to state a claim upon which relief can be granted.

### A.      Summary of the Plaintiffs' Argument

The plaintiffs contend that initiating a police stop by unnecessarily aiming firearms at the person stopped constitutes excessive force (Count II). An excessive force claim

---

[1] As discussed in Section III(E) of this Opinion and Order, the Iowa Tort Claims Act is not a separate cause of action, but a mechanism through which the plaintiffs may bring their tort claims against the state of Iowa in lieu of its state employees.

should be analyzed under the "objective reasonableness" standard of the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 395, 109 S. Ct. 1865 (1989). Additionally, the plaintiffs rely on Article I § 8 of the Iowa Constitution to support this claim. The plaintiffs argue that when three officers storm out of a car with guns pointed at a person, there need not be an additional showing that the officers intended or attempted to use their firearms, for the force to be objectively unreasonable. The defendants' actions indicate to a reasonable person that deadly force may be used if the officers' commands are not obeyed. The plaintiffs seek a remedy for the violation, with respect to the "objective reasonableness," of their Fourth Amendment rights, through 42 U.S.C. § 1983.

The plaintiffs also argue that the defendants conducted an unreasonable search and seizure in violation of the Fourth Amendment (Count I). Wilson complied with Lamp's instruction, cooperated when questioned, and the defendants quickly determined that Wilson was not the suspect they were pursuing. State Appeal Board Claim Form and Affidavit Attachment, 4 (docket no. 12-2). After making this determination, Dorhout-Van Engen searched Wilson's person and then searched inside and underneath Wilson's truck without his consent. *Id.* One or more of the defendants searched the covered and closed bed of Wilson's pickup truck and its underside. *Id.* The plaintiffs contend that a driver on a public highway has a reasonable expectation of privacy in his automobile. The plaintiffs further contend that a search of an automobile in such circumstances, without a warrant or probable cause, is an unconstitutional violation of the Fourth Amendment. The plaintiffs additionally rely on Article I § 8 of the Iowa Constitution to support their claim of unreasonable search and seizure. When a government official violates the constitutional rights of an individual, an action against them in their individual capacity may be brought under 42 U.S.C. § 1983.

The plaintiffs allege that when the defendants detained the plaintiffs, forced Wilson out of his truck, and searched him and his vehicle without his consent, they argue that there was an "intrusion upon seclusion" sufficient to sustain a state tort claim for invasion of privacy (Count IV). The plaintiffs also contend that the actions of Lamp and Dorhout-Van Engen were extreme and outrageous. They argue the defendants either acted intentionally to cause emotional distress to the plaintiffs or otherwise acted with reckless disregard of the probability of causing emotional distress. The plaintiffs contend that this outrageous conduct caused and will cause the plaintiffs to suffer severe or extreme emotional distress (Count III).

The plaintiffs argue that the defendants' actions of forcing Wilson out of his truck at gun point with weapons drawn on M.W. and then searching Wilson and his truck without justification, placed their lives in jeopardy. The plaintiffs argue that these acts amount to negligent investigation and negligent investigation can be the basis of liability against police officers if their conduct falls within one of the exceptions set forth in *Mastbergen v. City of Sheldon*, 515 N.W.2d 3, 5 (Iowa 1994). The plaintiffs argue this amounts to a failure to exercise reasonable care under the circumstances to sustain a claim of negligence (Count V). Additionally, the plaintiffs argue that there is no requirement that each and every possible legal theory to support a claim under the ITCA must be articulated to the State Appeal Board in order to make a subsequent suit valid.

The plaintiffs also raise the ITCA, by itself, as a cause of action (Count VI).

### B. Summary of the Defendants' Argument

The defendants argue that plaintiffs' claim for excessive force, Count II, requires at least some physical injury. Additionally, they argue that the act of a police officer pointing a gun at a person is not a constitutional violation by itself. Here, there was no harmful physical contact between the plaintiffs and the defendants. Therefore, the

defendants request that the claim for excessive force be dismissed. The defendants point out that the state of Iowa should be substituted for Lamp and Dorhout-Van Engen for all state tort claims pursuant to the ITCA. The defendants argue that the plaintiffs have failed to state a claim for an invasion of privacy (Count IV). The defendants presume this claim is being brought under an "intrusion upon seclusion" theory, given the plaintiffs' Petition did not specify. The defendants contend that, what can be seen in plain view from a public vantage point, is not an intrusion upon seclusion. The plaintiffs were in their pickup truck, visible through car windows, and on a public thoroughfare. Therefore, an intrusion on seclusion claim cannot be maintained. As to the negligence claim (Count V), the defendants argue that the plaintiffs have not exhausted the administrative remedies required by the ITCA before instituting suit. The defendants further argue, that in any case, no special relationship existed between the plaintiffs and the officers to give rise to a negligence cause of action. Additionally, the defendants note that the ITCA, by itself, is not a viable cause of action (Count VI).

### III.    DISCUSSION

The analysis of plaintiffs' claim for excessive force is bifurcated as two claims, one under the Iowa Constitution and one under the United States Constitution. The analysis under the Iowa Constitution is contained in Section B, below, and the analysis under the United States Constitution in Section C. The analysis of qualified immunity for the excessive force claim is contained in Section D. I then analyze the Iowa Tort Claims Act and claims brought pursuant to it in Section E.

The plaintiffs argue 42 U.S.C. § 1981 as another basis for their claims, without explaining how this would provide for recovery. Section 1981 is generally used as a basis to prohibit racial discrimination in the context of employment and the making and enforcement of private contracts. *See e.g., CBOCS West, Inc. v. Humphries*, 553 U.S.

442, 449-57 (2008); *Keefe v. City of Minneapolis*, 785 F.3d 1216 (8th Cir. 2015). The only place plaintiffs mention § 1981 is in the Jurisdiction and Venue section of their Petition and in one brief, which notes that they "listed [ ] § 1981 in their petition as authority for the source of their rights that were deprived . . . ." Pls.' Br. Supp. Resp. And Res. To State Of Iowa And Lamp's Mot. to Dismiss, 2 (docket no. 14-1). Any basis for recovery under § 1981 has not been adequately pleaded, so I **grant** defendants' Motion to Dismiss any § 1981 claims as to all defendants. Only defendants Lamp and Dorhout-Van Engen are charged in Count I, unreasonable search and seizure, through operation of 42 U.S.C. § 1983 and the Iowa Constitution, and neither have filed a resistance to that claim. Although the plaintiffs do not name the state of Iowa as a defendant in Count I, the defendants have clarified that the state of Iowa would not qualify as a "person" for the purposes of 42 U.S.C. § 1983. As this claim was never alleged, I do not grant the defendants' Motion to Dismiss Count I as to the state of Iowa, but note that it is not a defendant to this claim for the sake of clarity.

### A.      *Standard of Review for Motion to Dismiss*

The defendants move to dismiss certain claims pursuant to Federal Rule of Civil Procedure 12(b)(6). Rule 12(b)(6) authorizes a pre-answer motion to dismiss for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). As the Eighth Circuit Court of Appeals has explained,

> We review de novo the district court's grant of a motion to dismiss, accepting as true all factual allegations in the complaint and drawing all reasonable inferences in favor of the nonmoving party. *See Palmer v. Ill. Farmers Ins. Co.*, 666 F.3d 1081, 1083 (8th Cir. 2012); *see also* FED. R. CIV. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v.*

> *Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d 868
> (2009) (internal quotation omitted). "A claim has facial
> plausibility when the plaintiff pleads factual content that
> allows the court to draw the reasonable inference that the
> defendant is liable for the misconduct alleged." *Id*.

*Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 850 (8th Cir. 2012); *accord Freitas v. Wells Fargo Home Mortg., Inc.*, 703 F.3d 436, 438 (8th Cir. 2013) (quoting *Richter*, 686 F.3d at 850); *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (stating the same standards).

Courts consider "plausibility" under this Twom-bal standard[2] by "draw[ing] on [their own] judicial experience and common sense." *Whitney*, 700 F.3d at 1128 (quoting *Iqbal*, 556 U.S. at 679). Also, courts must "review the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation." *Id*. (quoting *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n.4 (8th Cir. 2010)). The Eighth Circuit Court of Appeals has refused, at the pleading stage, "to incorporate some general and formal level of evidentiary proof into the 'plausibility' requirement of *Iqbal* and *Twombly*." *Id*. Nevertheless, the question "is not whether [the pleader] might at some later stage be able to prove [facts alleged]; the question is whether [it] has adequately asserted facts (as contrasted with naked legal conclusions) to support [its] claims." *Id*. at 1129. Thus, while this court must "accept as true all facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the non-moving

---

[2] The "Twom-bal" standard is my nickname for the "plausibility" pleading standard established in the United States Supreme Court's twin decisions on pleading requirements, and standards for dismissal for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for claims in federal court. *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007); *see also Iqbal,* 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

party," *United States v. Any & All Radio Station Transmission Equip.*, 207 F.3d 458, 462 (8th Cir. 2000), "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937 (quoting *Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)); *Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012); *Whitney*, 700 F.3d at 1128 (stating the same standards). With the above standards in mind, I turn to consider the defendants' Motions to Dismiss. In each section, below, I discuss the requirements for the claim at issue, following which I analyze whether the plaintiffs' factual allegations sufficiently state a plausible claim.

### B. Excessive Force in Violation of the Iowa Constitution

Historically, there has been no private cause of action for money damages under the Iowa Constitution. This issue was recently considered by the Iowa Court of Appeals in *Conklin v. State*, 863 N.W.2d 301 (Iowa App. 2015), relying on the analysis in *Meinders v. Duncan Cmty. Sch. Dist.*, 645 N.W.2d 632, 635 (Iowa 2002). However, this decision is currently under consideration by the Iowa Supreme Court. Iowa Judicial Branch, *Iowa Supreme Court: Further Review Orders*, http://www.iowacourts.gov/About_the_Courts/Supreme_Court/Further_Review_Orders (last visited Nov. 12, 2015). In *Conklin*, the Iowa Court of Appeals noted that Article XII, § 1 of the Iowa Constitution states in part: "The general assembly shall pass all laws necessary to carry this constitution into effect." Implicit in this phrasing is that the constitution, itself, does not create a cause of action for a violation of its terms; rather, the legislature must pass laws in order for a remedy to exist. The Iowa legislature has not enacted a statute which would allow for a private cause of action for a violation of Article I § 8 of the Iowa Constitution. Therefore, the Iowa Court of Appeals noted that

the text of the constitution itself counsels against a judicially implied remedy for a private cause of action. Given the express language in Article XII, which grants the legislature the power to enact laws to carry the constitutional provisions into effect, it would create a significant separation-of-powers issue were the court to imply a remedy in the absence of a statute. *See Klouda v. Sixth Judicial Dist. Dep't of Corr. Servs.*, 642 N.W.2d 255, 260 (Iowa 2002) (noting: "The separation-of-powers doctrine is violated 'if one branch of government purports to use powers that are clearly forbidden, or attempts to use powers granted by the constitution under another branch.'"(internal citations omitted)).

Because this issue in *Conklin* is currently under consideration by the Iowa Supreme Court, I **reserve ruling** on the defendants' Motions to Dismiss plaintiffs' Count II of excessive force as it relates to Article I § 8 of the Iowa Constitution. There remains, however, an avenue of relief for this claim pursuant to 42 U.S.C. § 1983 based on violation of the United States Constitution. This claim is analyzed below.

### C.    *Excessive Force Pursuant to Section 1983*

42 U.S.C. § 1983 was designed to provide a "broad remedy for violations of federally protected civil rights." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 685, 98 S. Ct. 2018 (1978). However, 42 U.S.C. § 1983 provides no substantive rights. *Albright v. Oliver*, 510 U.S. 266, 271, 114 S. Ct. 807 (1994). "One cannot go into court and claim a 'violation of [42 U.S.C.] § 1983' – for § 1983 by itself does not protect anyone against anything." *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617, 99 S. Ct. 1905 (1979). Rather, § 1983 provides a remedy for violations of all "rights, privileges, or immunities secured by the Constitution and laws [of the United States]." 42 U.S.C. § 1983; *see also Albright*, 510 U.S. at 271.

In a § 1983 action, the plaintiff must prove: (1) that "the conduct complained of was committed by a person acting under color of state law;" and, (2) that the "conduct

deprived a person of rights, privileges, or immunities secured by the Constitution of the United States." *Parratt v. Taylor*, 451 U.S. 527, 535 101 S. Ct. 1908 (1981), overruled on other grounds by *Daniels v. Williams*, 474 U.S. 327, 106 S. Ct. 662 (1986). There is no dispute about the first element: neither party contests that the defendant officers were acting under color of state law. Thus, this analysis will focus on the second element of a § 1983 action.

In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force. *Graham v. Connor*, 490 U.S. 386, 109 S. Ct. 1864 (1989).

> [A] free citizen's claim that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other "seizure" of his person [ ] are properly analyzed under the Fourth Amendment's "objective reasonableness" standard. . . . Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake. Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it. Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, however, its proper application requires careful attention to the facts and circumstance of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he was actively resisting arrest or attempting to evade arrest by flight. . . . The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of

> hindsight. . . . Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation.

*Id.* (citations omitted). The United States Supreme Court has established a purposefully flexible "objective reasonableness" test that pays "careful attention to the facts and circumstances of each particular case[.]" *Id.* at 396. The Supreme Court has reiterated this standard most recently in *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 192 L. Ed. 2d 416 (June 22, 2015). Although, in practice, some federal circuits, including the Eighth Circuit, have taken a different approach.

The Eighth Circuit Court of Appeals held that courts may dismiss Fourth Amendment excessive force claims based solely on one factor: whether or not the claimant suffered an "actual injury" during the encounter. *Dawkins v. Graham* 50 F.3d 532, 534 (8th Cir. 1994) ("Assuming without deciding that the [plaintiffs] must have suffered some minimum level of injury to proceed with their Fourth Amendment excessive force claim, we conclude the necessary level of injury is actual injury."). A line of cases following *Dawkins* held that "the necessary level of injury is actual injury." *See e.g.*, *Lambert v. City of Dumas*, 187 F.3d 932, 936 (8th Cir. 1999); *Guite v. Wright*, 147 F.3d 747, 750 (8th Cir. 1998). Another line of cases in the circuit held the "actual injury" standard to mean that a *de minimis* use of force was insufficient to support a claim for excessive force. *See e.g.*, *Wertish v. Krueger*, 433 F.3d 1062, 1067 (8th Cir. 2006); *Hunter v. Namanny*, 219 F.3d 825, 832 (8th Cir. 2000); *Curd v. City Court*, 141 F.3d 839, 841 (8th Cir. 1998); *see also Hollingsworth v. City of St. Ann*, 2015 U.S. App. LEXIS 15676 (8th Cir. Sept. 3, 2015).

To address the ongoing confusion about "whether a plaintiff must demonstrate greater than *de minimis* injury to establish a use of excessive force that violates the Fourth Amendment" the Eighth Circuit Court of Appeals recently reiterated that the appropriate inquiry is "whether the force used to effect a particular seizure is 'reasonable.'" *Chambers v. Pennycook*, 641 F.3d 898, 906 (8th Cir. 2011) (quoting *Graham*, 490 U.S. at 396). In *Chambers*, the court stated, "[T]here is no uniform requirement that a plaintiff show more than *de minimis* injury to establish an application of excessive force." *Id.* The court expressly rejected the proposition that, "evidence of only *de minimis* injury necessarily forecloses a claim of excessive force under the Fourth Amendment." *Id.* Although almost all excessive force claims in the Eighth Circuit are based on the unreasonableness as to the infliction of physical injury, this is not a requirement. "The degree of injury should not be dispositive, because the nature of the force applied cannot be correlated perfectly with the *type of injury* inflicted." *Id.* (emphasis added).

As neither party has pointed to an Eighth Circuit case on point, I will explore nonbinding, out-of-circuit authority. The Seventh Circuit Court of Appeals has repeatedly held that gun-pointing when an individual presents no danger is unreasonable and violates the Fourth Amendment. *See e.g.*, *Jacobs v. City of Chicago*, 215 F.3d 758, 773-74 (7th Cir. 2000) (pointing a gun at an elderly man's head for ten minutes even after realizing that he is not the desired suspect and when he presents no resistance is "out of proportion to any danger that [the plaintiff] could possibly have posed to the officers or any other members of the community."); *McDonald v. Haskins*, 966 F.2d 292, 294-95 (7th Cir. 1992) (pointing a gun at a nine-year-old child during a search and threatening to pull the trigger was "objectively unreasonable"). Undertaking a similar analysis, the Tenth Circuit Court of Appeals has noted that "[p]ointing a firearm directly at a child calls for even greater sensitivity to what may be justified or what may be excessive under all the circumstances." *Holland v. Harrington*, 268 F.3d 1179 (10th

Cir. 2001). In determining that an officer was objectively unreasonable in using a submachine gun to round up everyone in a shop and warehouse, which was the subject of an investigation, the Seventh Circuit Court of Appeals considered that the suspected crime was nonviolent, there was no threat to the safety of the officers involved, and none of the plaintiffs resisted detention or attempted to flee. *Baird v. Renbarger*, 576 F.3d 340, 344 (7th Cir. 2009). The *Baird* court further concluded that, "[p]laintiffs need not show physical injury in order to sustain an excessive force claim." *Id*. The Ninth Circuit Court of Appeals reached a similar conclusion in determining "[a]n officer's show of force is subject to Fourth Amendment reasonableness requirements even where no actual force is applied." *Motley v. Parks*, 432 F.3d 1072 (9th Cir. 2005) (indicating agreement with the Fifth Circuit Court of Appeals that "[a] police officer who terrorizes a civilian by brandishing a cocked gun in front of that civilian's face may not cause physical injury, but he has certainly laid the building blocks for a section 1983 claim against him.") (quoting *Petta v. Rivera*, 143 F.3d 895, 905 (5th Cir. 1998)). In at least one Eighth Circuit case, the court held that posttraumatic stress disorder could qualify as actual injury to substantiate a claim for excessive force. *Dawkins*, 50 F.3d at 534.

Applying the standard set by the Supreme Court in *Graham*, as interpreted by *Chambers*, the key question is whether the officers' conduct was objectively reasonable under the circumstances, as judged from the perspective of a reasonable officer on the scene at the time the force was applied. The defendant officers, in this case, were in pursuit of a suspect for a crime which did not involve violence. The clerk at the local convenience store may disagree, but the crime of driving away without paying for gasoline is not in the realm of severe. The officers make no indication in the record that they suspected they were pursuing someone armed and dangerous. The defendants have presented no evidence that would justify initiating the stop of the plaintiffs' truck in such an aggressive and hostile manner. The defendant officers quickly determined that the

plaintiffs were not the suspect they were seeking, yet they kept a gun trained on a six year old child. Keeping a shotgun or rifle aimed at a six year old for the duration of the stop, especially after determining that Wilson and M.W. posed no threat and, in fact, were not the suspect sought, calls for greater sensitivity to what is excessive. The defendant officers determined almost immediately that the plaintiffs posed no threat to their safety, as one of the defendant officers soon engaged Wilson in seemingly polite conversation. The plaintiffs complied with the officers' requests and offered no resistance. Although the plaintiffs' Petition alleges only "past and future physical and mental pain and suffering" and "past and future loss of full mind and body," the State Appeal Board Claim Form explains further; "[Wilson] now suffers from bad anxiety and is having nightmares . . . [he] takes anxiety medication that he did not take prior to the incident," additionally "[he] does not like to go outside when it is dark out in fear [of] guns being drawn on him. [he] is also very agitated and short with people because he is on edge all the time." The form also states that "[M.W.] has suffered much and the trauma has affected him deeply. He has become more withdrawn and sad in his disposition." Accepting as true all facts pleaded by the non-moving party and granting all reasonable inferences from the pleadings in favor of the non-moving party, the plaintiffs have adequately stated a federal claim for excessive force.

Therefore, the defendants' Motions to Dismiss plaintiffs' Count II for excessive force, brought under 42 U.S.C. § 1983, are **denied.**

### D. Qualified Immunity For Excessive Force

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808 (2009) (quoting *Harlow v. Fitzgerald*, 457

U.S. 800, 818, 102 S. Ct. 2727 (1982)). In *Pearson*, the United States Supreme Court offered this explanation of the reasoning behind the concept of qualified immunity: "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* The Supreme Court has made clear that the driving force behind the creation of the qualified immunity doctrine was a desire to ensure that "'insubstantial claims' against government officials [will] be resolved prior to discovery." *Pearson* 555 U.S. at 231 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 n.2 (1987). The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Groh v. Ramirez*, 540 U.S. 551, 567, 124 S. Ct. 1284 (2004) (KENNEDY, J., dissenting) (quoting *Butz v. Economou*, 438 U.S. 478, 507, 98 S. Ct. 2894 (1978) (for the proposition qualified immunity covers "mere mistakes in judgment, whether the mistake is one of fact or one of law")). *Pearson*, 555 U.S. at 231. To put it another way, "[w]hen properly applied, [qualified immunity] protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 131 S. Ct. 2074, 2085 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092 (1986)). The doctrine "allows officers to make reasonable errors so that they do not always err on the side of caution for fear of being sued." *Amrine v. Brooks*, 522 F.3d 823, 831 (8th Cir. 2008).

The Supreme Court and the Eighth Circuit Court of Appeals have explained that "[e]valuating a claim of qualified immunity requires a 'two-step inquiry: (1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct.'" *Burton v. St. Louis Bd. of Police Comm'rs*, 731 F.3d 784, 791 (8th Cir.

2013) (quoting *Brown v. City of Golden Valley*, 574 F.3d 491, 495 (8th Cir. 2009)). The official is entitled to qualified immunity unless the answer to both of these questions is yes. *Burton*, 731 F.3d at 791. As to the "clearly established law" prong, the Eighth Circuit Court of Appeals has explained, "[I]n light of the pre-existing law the unlawfulness [of the official's action] must be apparent." *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S. Ct. 2508 (2002) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034 (1987)). "Qualified immunity would be defeated if an official knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the plaintiff[s]." *Gordon ex rel. Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006) (alterations omitted) (citation and internal quotation marks omitted). "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Davis v. Hall*, 375 F.3d 703, 712 (8th Cir. 2004) (citation and internal quotation marks omitted). *See also Scott v. Baldwin*, 720 F.3d 1034, 1036 (8th Cir. 2013). There is no requirement, however, "that the very action in question has previously been held unlawful, but rather, in the light of pre-existing law the unlawfulness must be apparent." *Vaughn v. Ruoff*, 253 F.3d 1124, 1129 (8th Cir. 2001) (internal quotations and citations omitted); *see also Hope v. Pelzer*, 536 U.S. 730 (2002). The Eighth Circuit Court of Appeals has noted that it subscribes to a "broad view" of what constitutes clearly established law; "in the absence of binding precedent, a court should look to all available decisional law, including decisions of state courts, other circuits and district courts." *Tlamka v. Serrell*, 244 F.3d 628, 634 (8th Cir. 2001) (quoting *Buckley v. Rogerson*, 133 F.3d 1125, 1128 (8th Cir. 1998)); *see also Bell v. Burl*, 605 Fed. Appx. 593 (8th Cir. July 1, 2015). Although the court in *Tlamka* could not find a decision with a similar set of facts, they concluded that the principles laid out in other cases could pierce the shield of qualified immunity. *Id.* "Once the predicate

facts are established, the reasonableness of the official's conduct under the circumstances is a question of law." *Id.* at 632.

The Supreme Court has repeatedly stressed the importance of resolving immunity questions at the earliest possible stage in litigation. *Pearson*, 555 U.S. at 232 (citing *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam)). However, the Court also noted the difficulty in determining qualified immunity at the pleading stage, when the precise factual basis for the plaintiffs' claim may be hard to identify. *Id.* at 239. The Court further notes that several courts have recognized the two-step inquiry of determining qualified immunity is "an uncomfortable exercise where . . . the answer [to] whether there was a violation may depend on a kaleidoscope of facts not yet fully developed." *Id.* (citing *Dirrane v. Brookline Police Dept.*, 315 F.3d 65, 69-70 (C.A.1 2002) *see also Robinette v. Jones*, 476 F.3d 585, 592 n.8 (C.A.8. 2007) (declining to follow the two-step inquiry because "the parties have provided very few facts to define and limit any holding" on the constitutional question). The *Pearson* court recognized the danger of bad decisionmaking when courts have an obligation to resolve immunity issues at the earliest possible stage, if briefing of constitutional questions is woefully inadequate. *Id.* at 239 (citing *Lyons v. Xenia*, 417 F.3d 565, 582 (C.A.6 2005)). The *Pearson* court also quoted *Mollica v. Volker*, noting the "risk that constitutional questions may be prematurely and incorrectly decided in cases where they are not well presented." 229 F.3d 366, 374 (C.A.2 2000).

Lamp and the state of Iowa raise the issue of qualified immunity and rely on *Chambers v. Pennycook*, 641 F.3d 898 (8th Cir. 2011). However, in *Chambers*, the court rejected a constitutional rule that turned on the arrestee's degree of injury, thus changing the law that prevailed at the time of the officers' actions in that case. It was because this change in the law occurred after the officers' actions that they were granted qualified immunity in *Chambers*. The standard for an excessive force claim, determined

in *Chambers*, was the prevailing law at the time of the defendant officers' actions in this case and is still the prevailing law.

Lamp and the state of Iowa address the issue of whether the constitutional violation was "clearly established" by raising several cases to show that, when an officer points a gun at a suspect, detainee, or inmate, there is no violation. State Defs.' Reply To Pls.' Res. to State Defs.' Mot. To Dismiss, 2-3. However, the cases they raise, cited below, are all distinguishable because: the plaintiffs in those cases were resisting officers, fleeing arrest, already incarcerated, or combative; the law only became "clearly established" by the court after the officers acted, like in *Chambers*; or where an outdated standard of excessive force was applied. Because, in some of the cases the defendants raise, qualified immunity was decided in the context of alleged violations of the constitutional rights of inmates, I note that the Eighth Amendment standard for excessive force applies when the plaintiff is incarcerated, instead of the Fourth Amendment standard, which applies here. *Kingsley*, 135 S. Ct. at 2475 (while noting that the objective standard is appropriate for an excessive force claim by pretrial detainees and a person who has been accused, but not convicted of a crime, whereas the subjective standard is appropriate when the claim is brought by convicted prisoners, the Court stated, "[t]he language of the two Clauses differs, and the nature of the claims often differs."). The defendants cite: *Edwards v. Giles*, 51 F.3d 155 (8th Cir. 1989) (suspect fleeing apprehension); *Grider v. Bowling*, 785 F.3d 1248 (8th Cir. 2015) (officers use of force not excessive because the plaintiff refused to exit his vehicle and was in possession of a knife); *Johnson v. Carroll*, 658 F.3d 819 (8th Cir. 2011) (majority opinion concluding there was sufficient evidence to preclude summary judgment on the basis of official immunity at the district court level, defendants cite the dissenting opinion for the contrary point); *Policky v. City of Seward*, 433 F. Supp. 2d 1013 (D. Neb. 2006) (officer entered a room with combative suspect, allegedly with taser drawn, and handcuffed suspect because needles were nearby and

could be used as weapons); *Johnson v. Grob*, 928 F. Supp. 889 (W.D. Mo. 1996) ("knock and announce rule" had not yet been declared at the time of officers' actions, therefore no violation of "clearly established law"); *Wilkins v. May*, 872 F.2d 190 (7th Cir. 1989) (relying on several cases, all analyzing excessive force under the outdated "severe injury" standard); *Rodriguez v. Vega*, 2015 WL 4241042 (W.D. Ark. July 15, 2013) (relying on *Edwards v. Giles* without a discussion of the circumstances of the individual case); *Brown v. Moore*, 2014 WL 4410178 (W.D. Ark. Sept. 8, 2014) (denying an excessive force claim under the Eighth Amendment standard where an officer drew a taser on an inmate who refused to obey orders); *Kaleta v. Johnson*, 2013 WL 3448148 (D. Minn. July 9, 2013) (officer, responding to a call about a man acting bizarrely and chasing a woman, drew a gun on the agitated man who would not comply with orders); and *Frison v. Zebro*, 2002 WL 539069 (D. Minn. Apr. 5, 2002) (officers had reason to believe that the suspect might be dangerous based on having already been summoned to the suspect's residence on eighty-five occasions).

To be clear, qualified immunity has not been asserted with respect to the Fourth Amendment unreasonable search and seizure claim, it has only been raised in the context of the excessive force claim under the Fourth Amendment. If deciding the issue of qualified immunity now, I would resolve that the law is clearly established, based on the Fifth, Seventh, Eighth, Ninth, and Tenth Circuit cases cited in Section III(C) of this Opinion and Order, and because the cases raised by the defendants are easily distinguishable. The defendants have not cited any contrary authority which is analogous to the facts and circumstances of this case. However, the plaintiffs' degree of injury and the basis for which the defendants initiated a traffic stop in such a hostile manner, in search of a suspect accused of stealing gasoline, have not been adequately developed in the record. Because of the reasons in *Pearson* set forth above, noting the concerns of other courts in resolving the issue of qualified immunity on a prematurely developed

record, and based on the limited extent to which the parties' briefs address qualified immunity, I will not resolve the issue at this early juncture.

### E.    *Iowa Tort Claims Act*

Generally, the state of Iowa may be sued for damage caused by the negligent or wrongful acts or omissions of state employees acting within the scope of their employment, to the same extent that a private person may be sued. IOWA CODE § 669.2(3)(a); *see also Magers-Fionof v. State*, 555 N.W.2d 672, 674 (Iowa 1996). Lawsuits against the state of Iowa are authorized by the ITCA. IOWA CODE Ch. 669 (2014). Although the ITCA does not, itself, create a cause of action, it "recognizes and provides a remedy for a cause of action already existing which would have otherwise been without remedy because of common law immunity." *Minor v. State*, 819 N.W.2d 383, 405 (Iowa 2012) (quoting *Engstrom v. State*, 461 N.W.2d 309, 314 (Iowa 1990)). As a condition to waiving its sovereign immunity by enacting the ITCA, the legislature established an administrative procedure for litigants to follow prior to commencing an action in court. IOWA CODE § 669.5. The ITCA requires a claim to be filed with the director of the department of management. *Id*. at 669.3(2). The administrative process allows the state attorney general to dispose of the claim through payment, settlement, or other disposition. *Id*. § 669.3(1). A litigant may only proceed to court under the ITCA if the attorney general fails to dispose of the claim within six months and the claimant provides notice to the attorney general of the intent to withdraw the claim from further consideration. *Id*. § 669.5(1).

As long as the employee was acting within the scope of employment at the time of the underlying incident, the suit is deemed to be an action against the state of Iowa. *Id*. The attorney general may certify that the defendant was an employee acting within the scope of employment. *Id*. § 669.5(2)(a). If the attorney general fails to certify that the

employee was acting within the scope of their employment, or when a factual dispute exists as to whether the state employee was acting within the scope of his or her employment, the court cannot substitute the state of Iowa as a defendant until the court determines the employee acted within the scope of his or her employment. *Godfrey v. State*, 847 N.W.2d 578, 587 (Iowa 2014).

When a state employee acts outside the scope of his or her employment, the employee is responsible for the attorney's fees and the damages. Generally in a tort action, the fact finder decides whether an act is within the employee's scope of employment. *See Godar v. Edwards*, 588 N.W.2d 701, 706 (Iowa 1999). If the court can resolve the scope of employment issue by summary judgment, the court shall substitute the state of Iowa as the defendant for the employee. *Godfrey*, 847 N.W.2d at 586. If the fact finder can establish the employee was acting within the scope of his or her employment, the court shall substitute the state of Iowa as the defendant for the employee. *Id*.

The plaintiffs allege in their Petition that "[d]efendants at all times were acting under color of state law and within the scope of their employment with the Iowa Department of Public Safety – Division of Criminal Investigation or other governmental entity." (Pet. ¶ 26). Lamp, the state of Iowa, and Dorhout–Van Engen do not contest that they were acting within their scope of employment for the state of Iowa. So, the ITCA applies and the plaintiffs' tort claims are deemed to be against the state of Iowa.

The provisions of chapter 669 of the Iowa Code merely enable the plaintiffs to allege their other tort causes of action which are analyzed below. The plaintiffs separately allege a cause of action, Count VI, the "ITCA" claim in their Petition, which is not, itself, a cause of action. The plaintiffs may have merely intended to highlight that, to some extent, the administrative requirements for their tort claims were met before they filed suit in court. The plaintiffs' claims which do fall under the ITCA are: Count III for

the intentional infliction of emotional distress, Count IV for Invasion of Privacy, and Count V for Negligence. Those claims are analyzed below.

Because the ITCA is not a cause of action, in itself, the defendants' Motion to Dismiss plaintiffs' Count VI for "Iowa Tort Claims Act" is **granted** as to all defendants.

### 1. *Intentional infliction of emotional distress*

The ITCA does not permit claims arising out of "abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." IOWA CODE § 669.14(4). However, the Act does not expressly prohibit claims for intentional infliction of emotional distress. *Id.* In fact, a recent Iowa Supreme Court case found that a claim for intentional infliction of emotional distress could be brought under the ITCA. *Smith v. Iowa State University of Science and Technology*, 851 N.W.2d 1, (Iowa 2014). No party contests that defendants Lamp and Dorhout–Van Engen were acting within the scope of their employment as employees for the state of Iowa. The plaintiffs complied with the administrative requirements of the ITCA. The State Defendants' Motion to Dismiss moves to substitute the state of Iowa pursuant to the ITCA and to dismiss this claim against Lamp. According to *Godfrey*, the court *shall* substitute the state of Iowa as defendant for the employees in those circumstances. *Godfrey*, 847 N.W. 2d 578, 586 (Iowa 2014). So, although Dorhout-Van Engen did not request that the state of Iowa be substituted as defendant instead of her, relief may still be granted.

Therefore, the state of Iowa is substituted as the sole defendant for Count III of intentional infliction of emotional distress and defendants' Motions to Dismiss this claim, as against Lamp and Dorhout-Van Engen, are **granted in part**.

## 2.     *Negligence*

A tort claim against the state of Iowa must first be presented to the State Appeal Board pursuant to the procedures detailed in Iowa Code chapter 669, the ITCA. *Swanger v. State*, 445 N.W.2d 344, 346 (Iowa 1989).  The Supreme Court of Iowa has held that exhaustion of the administrative remedy provided by chapter 669 is jurisdictional.  *Id.* at 347; *Brumage v. Woodsmall*, 444 N.W.2d 68, 70 (Iowa 1989).  Improper presentment of a claim has been considered a failure to exhaust one's administrative remedies, depriving the district court of subject matter jurisdiction.  *See e.g.*, *Bloomquist v. Wapello County*, 500 N.W.2d 1 (Iowa 1993) (no jurisdiction of loss-of-consortium claims because they had not been included in administrative claim).  The Iowa Supreme Court has clarified the pleading standards that must be met for the purposes of the ITCA in *Bloomquist*, 500 N.W.2d 1, 8 (Iowa 1993).  In *Bloomquist*, the Iowa Supreme Court held that it is incumbent on a claimant to first file each independent cause of action before the proper administrative agency, even if the additional specificity would not change the state of Iowa's approach to defending the case.  *Id.*

In the plaintiffs' State Appeal Board Claim Form and Affidavits (docket nos. 12-2, 12-3) the only unlawful acts listed are:  (1) unreasonable search and seizure; (2) excessive force; (3) intentional infliction of emotional distress; and (4) invasion of privacy.  Accepting as true all facts pleaded by the non-moving party and granting all reasonable inferences from the pleadings in favor of the non-moving party, plaintiffs' claim for negligence, listed in their Petition ¶¶ 51-56, must be dismissed because the plaintiffs have not sufficiently stated a claim for relief and have failed to exhaust the requisite administrative remedies required by the ITCA.  *See Feltes v. State*, 385 N.W.2d 544, 546-48 (Iowa 1986) (citing *Weisbrod v. State*, 193 N.W.2d 125, 127 (Iowa 1971) ("This statutory suit may not be brought, however, until the administrative remedy is exhausted.")).  A claim for negligence was not first presented to the State Appeal Board.

Additionally, Iowa does not recognize a tort for negligent law enforcement response and investigation in the absence of a special relationship between the plaintiff and law enforcement. *See Morris v. Leaf*, 534 N.W.2d 388, 390 (Iowa 1995) ("Iowa courts have consistently held that law enforcement personnel do not owe a particularized duty to protect individuals; rather, they owe a general duty to the public."); *Mastbergen v. City of Sheldon*, 515 N.W.2d 3, 5 (Iowa 1994) ("Consistent with the common-law principles recognized by those sections, we have recognized two exceptions when law enforcement may be liable for damages: (1) when the police create the situation that places the citizen's life in jeopardy and (2) when the police take a citizen into custody and control."); *Smith v. State*, 324 N.W.2d 299, 302 (Iowa 1982) (holding "law enforcement officers have no liability for mere negligence in investigation of crime.") The Iowa Supreme Court has further stated, "the rule not only applies when the person allegedly harmed by a negligent investigation has been charged and arrested, but also when the allegedly negligent investigation results in no arrest." *Hildebrand v. Cox*, 369 N.W.2d 411, 415 (Iowa 1985).

Additionally, plaintiffs have not provided any facts which suggest that the defendant officers in question created a special relationship such that Iowa law would allow for recovery on a negligence theory.

Therefore, defendants' Motions to Dismiss plaintiffs' Count V of negligence are **granted** as to all defendants.

### 3.    *Invasion of privacy*

The Iowa Supreme Court has adopted and applied the principles of invasion of privacy articulated in the Restatement (Second) of Torts (1977). *See Stessman v. American Black Hawk Broad. Co.*, 416 N.W.2d 685, 686 (Iowa 1987). Four types of invasion of privacy are recognized, but relevant to this discussion is the "unreasonable

intrusion upon the seclusion of another." RESTATEMENT (SECOND) OF TORTS §§ 652A, 652B. This form of invasion of privacy generally requires the plaintiff to establish two elements. The first element requires an intentional intrusion, physically or otherwise, into a matter to which the plaintiff has a right to expect privacy. *In re Marriage of Tigges*, 758 N.W.2d 824, 829 (Iowa 2008). The next element requires the act to be "highly offensive to a reasonable person." *Id.* Considering an intrusion upon seclusion claim based on Iowa law, the Eighth Circuit Court of Appeals has noted that "both the manner of intrusion as well as the nature of the information acquired . . . must rise to the level of being highly offensive to the reasonable person." *Hill v.* McKinley, 311 F.3d 899, 906 (8th Cir. 2002) (quoting *Fields v. Atchison, Topeka, and Santa Fe Ry. Co.*, 985 F. Supp. 1308, 1312 (D. Kan. 1997)). There is no liability for observing a person while on a public highway "since he is not then in seclusion, and his appearance is open to the public eye." RESTATEMENT (SECOND) OF TORTS § 652B comment c. However, "[T]he mere fact a person can be seen by others does not mean that person cannot legally be 'secluded.'" *Stessman*, 416 N.W.2d at 687 (quoting *Huskey v. NBC, Inc.*, 632 F. Supp. 1282, 1287-88 (N.D. Ill. 1986)).

In *Marriage of Tigges*, the Iowa Supreme Court repeatedly assessed the first element of an intrusion upon seclusion claim through a "reasonable expectation of privacy" analysis. *In re Marriage of Tigges*, 758 N.W.2d 825-30. Although this is a state tort law claim, the language of the standard is the same as a Fourth Amendment analysis. A state tort action is generally between private citizens, whereas a Fourth Amendment violation is applicable to state actors by incorporation via the Fourteenth Amendment. *See State v. Manning*, 856 N.W.2d 36 (Iowa Ct. App. 2014); *Mapp v. Ohio*, 367 U.S. 643, 660 (1961). The Iowa Court of Appeals noted that a state law invasion of privacy claim does not necessitate a Fourth Amendment privacy analysis. *Davenport v. City of Corning*, 2007 Iowa App. LEXIS 1125 (Oct 24, 2007) (relying on

*Hill v. McKinley*, 311 F.3d 899, 905-06 (8th Cir. 2002). However, here, state actors are the alleged violators and they are being sued in tort by operation of the ITCA, so an invasion of privacy analysis under the Fourth Amendment is instructive to the state tort claim.

According to the Iowa Court of Appeals, the essential purpose of the Fourth Amendment proscription is to impose a standard of reasonableness upon law enforcement officers to safeguard the privacy and security of individuals against invasion. *State v. Anderson*, 479 N.W.2d 330, 332 (Iowa Ct. App. 1991). "An individual's reasonable expectation of privacy is not subject to arbitrary invasion solely at the unfettered discretion of the officers in the field." *Id.* (citing *Brown v. Texas*, 443 U.S. 47, 51, 99 S. Ct. 2637 (1979)). "[O]ccupants of motor vehicles . . . ordinarily have a legitimate expectation of privacy which is invaded when the vehicle is stopped by the government." *State v. Eis*, 348 N.W.2d 224, 226 (Iowa 1984). The Supreme Court has emphasized that even a frisk for weapons, which takes only a few seconds, is "a serious intrusion upon the sanctity of the person, which may inflict great indignity and arouse strong resentment[.]" *Terry v. Ohio*, 392 U.S. 1, 17, 88 S. Ct. 1868 (1968).

Defendants argue that, because the plaintiffs were on a public thoroughfare and, therefore, within the view of the public eye, there can be no intrusion upon seclusion. State Defendants' Br. in Support of Motion to Dismiss (docket no. 12-1). The defendants rely on various cases stating that there is a *reduced* expectation of privacy while operating a motor vehicle on a public road, such as *Davenport v. City of Corning*, 742 N.W.2d 605 (Iowa Ct. App 2007) and *Figured v. Paralegal Technical Servs., Inc.*, 555 A.2d 663, 667 (N.J. 1989). State Defendants' Br. in Support of Motion to Dismiss, 11 (docket no. 12-1); Defendant Dorhout-Van Engen's Brief in Support of Motion to Dismiss, 4 (docket no. 6-1). It is true that the plaintiffs' privacy was not invaded when the defendants viewed them from outside their car. But, here, the defendants stopped the plaintiffs and searched

Wilson's person and his truck without a warrant, probable cause, or other applicable exception to the warrant requirement. This intentional intrusion could be deemed highly offensive to a reasonable person. Regardless of whether they had a reduced expectation of privacy by being on a public road, it cannot be said that they had no expectation of privacy in regard to the interior of their vehicle or to Wilson's person. A claim has facial plausibility when the plaintiffs plead factual content that allows me to draw the reasonable inference that the defendants are liable for the misconduct alleged. The plaintiffs have done so here.

The plaintiffs complied with the administrative requirements of the ITCA. Lamp and Dorhout-Van Engen were acting within the scope of their employment for the state of Iowa. According to *Godfrey*, the court *shall* substitute the state of Iowa as the defendant in lieu of state employees in those circumstances. *Godfrey*, 847 N.W. 2d 578, 586 (Iowa 2014).

Therefore, the state of Iowa is substituted as the sole defendant for Count IV of invasion of privacy and defendants' Motions to Dismiss this claim, as against Lamp and Dorhout-Van Engen, are **granted in part**.


## IV.    CONCLUSION

Any claims arising from 42 U.S.C. § 1981, which was not plead as a separate count, but alleged generally to support Jurisdiction and Venue, are not sufficiently pleaded. Therefore, defendants' Motion to Dismiss any claims arising from § 1981 is **granted** as to all defendants.

As to Count I for unreasonable search and seizure, although plaintiffs have not named the state of Iowa as a defendant in this claim, the state of Iowa has nevertheless requested that the claim be dismissed. As this claim was never alleged, I do not grant

the defendants' Motion to Dismiss Count I as to the state of Iowa, but note that it is not a defendant to this claim for the sake of clarity.

As to Count II for excessive force, the plaintiffs have alleged two underlying sources of authority. Because the Iowa Supreme Court is currently considering this matter of state law in *Conklin v. State*, 863 N.W.2d 301 (Iowa App. 2015), I **reserve ruling** on defendants' Motions to Dismiss Count II as it arises from a violation of the Iowa Constitution. Because this claim may be viably brought pursuant to 42 U.S.C. § 1983 and the United States Constitution, defendants' Motions to Dismiss Count II, as it arises in this context, are **denied**.

As to Count III for intentional infliction of emotional distress, the state of Iowa is substituted as a defendant for Lamp and Dorhout-Van Engen pursuant to the ITCA. Therefore, the defendants' Motions to Dismiss as against Lamp and Dorhout-Van Engen are **granted in part**.

As to Count IV for invasion of privacy, the state of Iowa is substituted as a defendant for Lamp and Dorhout-Van Engen pursuant to the ITCA. Therefore, the defendants' Motions to Dismiss as against Lamp and Dorhout-Van Engen are **granted in part**.

As to Count V for negligence, because the plaintiffs did not exhaust their administrative remedies in accordance with the ITCA, the defendants' Motions to Dismiss are **granted** as against all defendants.

As to Count VI for "Iowa Tort Claims Act," because the ITCA is not, itself, a cause of action, defendants' Motion to Dismiss is **granted** as against all defendants.

**IT IS SO ORDERED**.

**DATED** this 3rd day of November, 2015.

MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA